## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ASHLEIGH L.,[1] | ) | 3:22-CV-675 (SVN) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, ACTING | ) | |
| COMMISIONER OF SOCIAL | ) | September 29, 2023 |
| SECURITY, | ) | |
| | ) | |
| *Defendant.* | | |

## ORDER ON MOTIONS FOR REMAND AND AFFIRMANCE

Sarala V. Nagala, United States District Judge.

Plaintiff Ashleigh L. brings this action pursuant to 42 U.S.C. § 405(g) requesting review of a final decision by the Commissioner of Social Security (the "Commissioner") that denied Plaintiff disability insurance benefits. Currently pending before this Court are Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) seeking remand of the case to the Social Security Administration, and Defendant's Motion for Order Affirming the Decision of the Commissioner (ECF No. 16). For the reasons described below, Plaintiff's motion for remand is DENIED and Defendant's motion to affirm the Commissioner's decision is GRANTED.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

#### A.   Plaintiff's Employment and Medical History

The parties have agreed to certain facts, set forth by Plaintiff at ECF No. 13 and adopted in part by the Commissioner at ECF No. 16-2. Plaintiff is a thirty-nine-year-old woman who has

---

[1] In order to protect the privacy interests of social security litigants while maintaining public access to judicial records, in opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

a college degree and past relevant work as a stock clerk, retail sales clerk, cashier, and a material handler/unloader.  Transcript ("Tr."), ECF No. 7, at 43, 78–80, 366; ECF No. 13 ¶ A.

Plaintiff suffers generally from joint pain in her knees, hips, elbows, and shoulders, fibromyalgia, polyarthalgia, and lumbar levoscoliosis.  Central to this appeal is the opinion of Dr. Charles Odonkor, an orthopedic specialist who treated Plaintiff starting on February 24, 2020, for her pain symptoms, following referral from her primary care physician.  Tr. at 541; ECF No. 13 ¶ B(3).  At that first visit, Dr. Odonkor noted that Plaintiff presented with a "very stooped posture" and an antalgic gait, and that she was "[n]ot able to stand tall due to pain," Tr. at 544.  Dr. Odonkor wrote that she had "significant baseline pain amplification and kinesi phobia [fear of movement], limiting her baseline physical function," *id.* at 540.  He prescribed a pain relief gel and referred Plaintiff to physical therapy, and directed her to return for steroidal injunctions at two joints.  *Id.* at 546.

Plaintiff's next visit with Dr. Odonkor took place via telehealth on May 20, 2020.  *Id.* at 534–38.  At that visit, Plaintiff reported having a recent flareup of pain symptoms; falling twice in the bathroom, resulting in plans to have her landlord install a bar installed in her tub; being unable to stand for an extended period of time while doing dishes due to pain and weakness; walking every other morning but otherwise being sedentary; continuing to have left hip pain; and being unable to lift, push, or pull objects, aside from moving furniture, during a recent residential move. *Id.* at 535.  Despite these issues, she reported having a 50% improvement in pain and function since her last visit.  *Id.* at 537.  Dr. Odonkor prescribed Tramadol for Plaintiff's pain, but did not order any new testing during this visit.  At a visit in June of 2020, Plaintiff reported a 50% improvement in pain and a 50% improvement in function, and Dr. Odonkor ordered an x-ray of

her right hip.  *Id.* at 556.  The x-ray results revealed that Plaintiff had mild lower lumbar levocurvature, but "preserved hip joints."  *Id.* at 567.

Despite her reports of improvement in her symptoms, Plaintiff continued to be treated for pain through 2020.  Plaintiff received two steroid injections in July of 2020.  *Id.* at 570–71.  She underwent an MRI of her sacrum in October of 2020, which showed mild edema near the right sacroiliac joint, partial sacralization of the L5 vertebrae on the right, and a mild broad disc bulge at the L4-L5 vertebrae.  *Id.* at 584–85.  An October 2020 x-ray of Plaintiff's knees did not demonstrate any acute issues.  *Id.* at 587.  There is also mention in Dr. Odonkor's treatment notes of an underlying mood disorder.  *See, e.g.*, *id.* at 558.

Plaintiff was examined by a state consultant medical examiner, Dr. Jan Akus, on January 27, 2020, who reported that Plaintiff had a full range of motion in her elbows, hips, knees, and ankles, but was unable to lift her left arm above the shoulder.  *Id.* at 501.  Additionally, Dr. Akus noted that Plaintiff reported pain when raising her left leg straight and when moving from the chair to the exam table, and had difficulty ambulating.  *Id.* at 501–02.  Dr. Akus further noted that Plaintiff did not use an assistive device for walking, but that her balance was intact.  *Id.* at 502.  Dr. Akus did not diagnose Plaintiff nor address any potential functional limitations.

State agency assessments conducted in February of 2020, and upon reconsideration in August of 2020, concluded that Plaintiff's conditions were not severe enough to keep her from working.  *Id.* at 275, 296.

In February of 2021, Plaintiff reported 60% pain relief after a nerve block procedure in January, and said that she had more good days than bad days, as her pain levels were improving.

*Id.* at 668.  She complained of pain in her ankle, but said she was able to do more housework than before.  *Id.*[2]  At this appointment, Plaintiff requested documentation for disability eligibility.  *Id.*

Dr. Odonkor completed a Physical Residual Function Capacity Assessment on March 8, 2021.  *Id.* at 589–96.  He concluded that Plaintiff could occasionally and frequently lift or carry less than ten pounds; stand and/or walk for total of less than two hours in an eight-hour workday; must periodically alternate sitting and standing to relieve pain; was limited in pushing and pulling in her lower and upper extremities; could not climb ramps, stairs, or ladders, balance, stop, kneel, crouch, or crawl; and was limited in reaching on  her left side.  *Id.* at 590–93.  In explaining his assessments, it is apparent Dr. Odonkor relied heavily on Plaintiff's own reports.  He explained that Plaintiff reported that pushing and pulling activities, including during grocery shopping, exacerbated her pain, *id.* at 590; that she had experienced three falls recently and was unable to stand for more than five minutes due to pain in her hips and knee instability, *id.*; that the postural limitations he assessed were appropriate because Plaintiff had reported difficulty with the activities of daily living due to her pain and medical issues, *id.* at 591; and that she reported weakness in her left arm, *id.* at 592.  Dr. Odonkor also assessed certain environmental limitations due to Plaintiff's reports of migraines, phonophobia, photophobia, and dizziness.  *Id.* at 593.  In assessing Plaintiff's postural limitations, Dr. Odonkor supplemented his recitation of Plaintiff's self-reporting by noting that imaging had showed scoliosis, sacralization of lumbar vertebrae, and other issues that cause her to experience a mechanical gait and balance issues.  *Id.* at 591.  Dr. Odonkor concluded that Plaintiff's pain, instability, balance issues, and weaknesses were "documented in prior records,"

---

[2] Plaintiff's statement about housework appears in a note dated February 25, 2021, under a heading entitled "Encounter November 19, 2021."  The Court believes the date following the word "Encounter" is a typographical error, since the note significantly predates November of 2021.

4

and, "in summary[,], she now has poor quality of life, cannot work or function well due to all of her aggregate medical issues." *Id.* at 595.

      B.  Procedural History

Plaintiff filed an application for disability insurance benefits on September 22, 2019.  Tr. at 26.  The claim was denied initially and upon reconsideration.  *Id.*  Plaintiff requested a hearing with an Administrative Law Judge ("ALJ"), which was held on March 30, 2021.  *Id.*  Plaintiff consented to proceeding without representation during the hearing.  *Id.* at 47–49.

During the hearing before ALJ Matthew Kuperstein, Plaintiff testified that she stopped working in May of 2019 because her symptoms became "too much" for her body.  *Id.* at 63.  She testified that she had stopped her outside walks and began using a cane for stability in July of 2020.  *Id.* at 59–60, 64–65.  Plaintiff stopped driving in 2014, and relies on friends for grocery drop-off and minimal outings from her house.  *Id.* at 65–68.  The ALJ also heard testimony from a vocational expert, who opined that, even when more significant limitations were proposed than the ALJ ultimately imposed, *see id.* at 35 n.1, six jobs existed in sufficient quantities in the national economy that Plaintiff could perform, even with her limitations.  *Id.* at 35.

The ALJ held the record open for thirty days following the hearing, and Plaintiff supplemented the record during that period.  *Id.* at 26.  The ALJ ultimately issued a decision finding that Plaintiff was not disabled from May 8, 2019, through May 20, 2021, the date of the ALJ's decision.  *Id.* at 35–36.

      C.  The ALJ's Decision

The ALJ's decision appears in full in the Transcript at pages 26–36 and is summarized here only as relevant.  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through the pertinent time period; that she had not engaged in substantial gainful

activity since May 8, 2019; that she had severe impairments of left shoulder impingement syndrome status post decompression surgery, mild degeneration bilateral knees, lumbar levoscoliosis, osteoarthritis, fibromyalgia, and polyarthralgia, and other non-severe impairments; and that the impairments did not meet or medically equal a listed impairment.  Tr. at 26–30.

The ALJ then concluded that Plaintiff had the residual functional capacity to perform light work, except that she is limited to:  "lifting and/or carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking with normal breaks for a total of six hours in an eight-hour workday; [and] sitting with normal breaks for a total of six hours in an eight-hour workday." *Id.* at 30.  The ALJ also found Plaintiff was frequently limited in climbing of ramps and stairs, balancing, stooping, kneeling, or crouching; occasional climbing of ladders, ropes, or scaffolds or crawling; could only occasionally reach overhead with her left arm; and could not lift overhead. *Id.*  In making this finding, the ALJ examined the medical evidence, including Dr. Odonkor's treatment records and functional capacity assessment.  The ALJ found Dr. Odonkor's assessment only "minimally persuasive," stating as follows:

> [T]he extent of the severe limitations are neither supported by Dr. Odonkor's treatment notes nor consistent with the treatment notes of all providers considered together (Exs. 7F-14F).  Although the undersigned accepts that the claimant has some limitations, the extent of the severe limitations in this assessment are not consistent with Dr. Odonkor's physical examination findings throughout his treatment notes.  Rather, the assessment appears to be based on the claimant's self-reports rather than objective medical findings.  For example, although Dr. Odonkor writes that the claimant has migraines with phonophobia, photophobia, and dizziness, there is no mention of migraine complaints or treatment throughout the record.

*Id.* at 33.  On the other hand, the ALJ found the state agency assessments "persuasive," as "the level of ongoing residential functional capacity limitations during the period at issue are supported by and consistent with the objective medical evidence of record when the assessments were made, and have remained consistent with the medical treatment notes submitted into the medical record

as a whole thereafter." *Id.*  In evaluating the state agency assessments, the ALJ found that "recent diagnostic imaging continued to reveal mild lumbar levoscoliosis and unremarkable findings in her bilateral knees." *Id.*

Plaintiff, through counsel, appealed the ALJ's unfavorable decision to the Appeals Council, citing new evidence that had been obtained since the ALJ's decision, including results of a July 6, 2021, ultrasound of her right knee revealing a cyst with evidence of rupture, medical compartment osteoarthritis with moderate joint effusion, and a suspected meniscal tear of the posterior horn. *Id.* at 485–86.  A steroid injection had also been administered for pain in her right knee. *Id.* at 485.  The Appeals Council denied her request for review. *Id.* at 1.  This appeal followed.

## II.     LEGAL STANDARDS

### A.   Legal Framework

Initially, "to be eligible for disability insurance benefits, an applicant must be 'insured for disability insurance benefits.'" *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989) (quoting 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1)).  The parties do not dispute that Plaintiff is insured here.

A person is "disabled" and entitled to disability insurance benefits if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(a).  A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).  In addition, a claimant must establish that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous

work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Social Security Act's definition of "disability." *See* 20 C.F.R. § 416.1520(a)(4). The five steps are best summarized as: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509 or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant is unable to perform his past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform in light of his RFC and his education, age, and work experience. *See Meade v. Kijakazi*, No. 3:20-CV-868 (KAD), 2021 WL 4810604, at *1 (D. Conn. Oct. 15, 2021); *see also* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

The claimant bears the burden of proof with respect to steps one through four, though at step five "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012). Once the ALJ identifies the jobs consistent with Plaintiff's RFC, either through the testimony of a vocational expert or the Medical Vocational

Guidelines, the ALJ must determine whether these jobs exist in significant numbers in the national economy, the region where a claimant lives, or several other regions of the country.  20 C.F.R. § 404.1566(a); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (stating the ALJ must show "there are significant numbers of jobs in the national economy that the claimant can perform").

### B.  Review of Commissioner's Decision

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *E.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (per curiam); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

"In determining whether the [Commissioner's] findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quotation marks and citation omitted).  "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently."  *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009).  The Court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage*, 692 F.3d at 122, and reject the Commissioner's findings of fact only "if a reasonable factfinder would have to conclude otherwise," *Brault*, 683 F.3d at 448 (internal quotation marks, citation, and emphasis omitted). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld."  *Selian*, 708 F.3d at 417.

If the Court identifies a legal error in the Commissioner's ruling, however, it need not examine whether substantial evidence supports the Commissioner's decision.  This is because, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  Thus, legal error may be sufficient grounds on which to remand to the agency for reconsideration, unless "application of the correct legal principles to the record could lead to only one conclusion[.]"  *Id.  See also Leslie H. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-150 (SALM), 2021 WL 5937649, at *2 (D. Conn. Dec. 16, 2021) ("The Court does not reach the second stage of review—evaluating whether substantial evidence supports the [agency's] conclusion—if the Court determines that the [agency] failed to apply the law correctly.").

### III.    DISCUSSION

In her motion for remand, Plaintiff contends:  (1) that the ALJ failed to appropriately evaluate Dr. Odonkor's medical opinion, in that he did not sufficiently articulate the supportability of the opinion and its consistency with the medical records, as required by the regulations; and (2) that the ALJ failed to properly evaluate Plaintiff's subjective statements of pain.  For the reasons explained below, the Court finds that the ALJ sufficiently articulated his reasons for finding Dr. Odonkor's medical opinion not supported by, or consistent with, the other medical records.  The Court also finds that the ALJ properly evaluated Plaintiff's subjective statements of pain.

A. <u>Persuasiveness of Medical Opinion</u>

1. *Regulations Post-March 27, 2017*

The Social Security Administration changed its regulations regarding consideration of medical opinion evidence by eliminating the "treating physician rule" for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FED. REG. 5844, 5848-49 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c. Prior to the shift in regulations, an ALJ was to defer to the opinions of a claimant's treating physician because said physician was "most able to provide a detail, longitudinal picture" of a claimant's medical history and limitations and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone. . ." 20 C.F.R. §§ 404.1527(c)(2). The ALJ was to give a treating physician's opinion "controlling weight" if the opinion was supported by other substantial evidence in a claimant's record; if the ALJ did not give a treating physician's opinion controlling weight, he was to apply factors[3] to determine how much weight to assign to that opinion. *Id.*. The ALJ was to also give "good reason" for the weight given to a treating physician's medical opinion. *Id.*

Moreover, medical opinions of consulting sources like state agency examiners were given limited weight. *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) ("[Limiting the weight of consulting sources] is justified because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'" (citations omitted)). If the opinion of a treating physician and consulting source conflicted, the ALJ was to generally favor the treating physician unless the treating physician's

---

[3] The factors were the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability; consistency; specialization; and other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

opinion was overridden by substantial evidence supporting the consulting source's opinion and not the treating physician's opinion. *See, e.g.*, *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015); *Jones v. Shalala*, 900 F. Supp. 663, 669 (S.D.N.Y. 1995).

The new regulations, on the other hand, do not require the ALJ to assign specific weight or deference to any medical opinion, including a treating physician's opinion. *See* 20 C.F.R. § 416.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."); *Dayle B. v. Saul*, No. 3:20-cv-00359 (TOF), 2021 WL 1660702, at *5, n.4 (D. Conn. Apr. 28, 2021) (citing *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7-8 (W.D.N.Y. 2021)). Instead, the ALJ is to apply the following factors in articulating how each medical opinion influenced the ALJ's final decision: supportability, consistency, relationship to the claimant, specialization, and other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c)(1)–(5).

The factors of supportability and consistency are "the most important" factors in evaluating an opinion's persuasiveness. *Id.* § 404.1520c(b)(2). Therefore, the ALJ is required to "explain how [he or she] considered the supportability and consistency factors." *Id.* As district courts in this circuit have noted, "[a]t their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, pointing to specific evidence in the record supporting those findings." *Briane S. v. Comm'r of Soc. Sec.*, No. 19-cv-1718-FPG, 2021 WL 856909, at *4 (W.D.N.Y. Mar. 8, 2021) (quoting *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021)). "Eschewing rote analysis and conclusory explanations, the ALJ must discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide

whether the determination is supported by substantial evidence." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (internal quotation marks, citation, and punctuation omitted).  As to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are, the more persuasive the medical opinion will be.  20 C.F.R. § 404.1520c(c)(1).  Similarly, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the opinion will be.  *Id.* § 404.1520c(c)(2).

The ALJ may also, but is not required to, explain the third, fourth, and fifth factors.  *Id.* § 416.920c(b)(2).  The claimant's relationship with their treating physician is split into five sub-factors: (1) the length of the treatment relationship, (2) the frequency of examinations, (3) the purpose of the treatment relationship, (4) the extent of the treatment relationship, and (5) whether there was an examining relationship.  *Id.*  Regarding specialization, a medical opinion is more persuasive if the medical professional giving the opinion is a specialist in the area relevant to the claimant's alleged conditions.  *Id.* at § 404.1520c(c)(4).  The fifth and final factor is a catch-all provision that allows the ALJ to consider factors that tend to support or contradict a medical opinion.  *Id.* at §§ 404.1520c(c)(5) (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements").

If the ALJ concludes that two or more medical opinions about the same issue are "both equally well-supported" and "consistent with the record," but are not exactly the same, then the ALJ must articulate any conclusions reached about persuasiveness related to the third, fourth, and fifth factors from § 404.1520c(c)(3)–(5), in addition to articulating conclusions about supportability and consistency.

### 2. *ALJ's Assessment of Dr. Odonkor's Opinion*

As noted above, the ALJ found Dr. Odonkor's opinion "minimally persuasive," opining that the extent of the limitations he proposed were "neither supported by" his treatment notes or his physical findings "nor consistent with the treatment notes of all providers considered together." Tr. at 33. The ALJ noted that much of Dr. Odonkor's assessment was based on Plaintiff's self-reports instead of "objective medical findings." *Id.* To that end, he cited an example in Dr. Odonkor's opinion concerning Plaintiff's report of migraines with phonophobia, photophobia, and dizziness, and noted that there is no mention of these types of problems in Plaintiff's medical records. *Id.*

Plaintiff argues this explanation does not meet the articulation requirements as to supportability and consistency established by the regulations and is not supported by substantial evidence. The Court disagrees as to both arguments. First, Plaintiff's characterization of the ALJ's articulation as "conclusory, one sentence rejection" understates the ALJ's analysis. While the ALJ summarized his findings as to supportability and consistency in one sentence, he then elaborated that the severe limitations Dr. Odonkor had proposed were not consistent with or supported by Dr. Odonkor's own treatment notes, the other treatment notes in the record, and objective medical findings. Earlier in the opinion, the ALJ meticulously catalogued the medical evidence in the record, spending significant time on the treatment records from Dr. Odonkor. Tr. at 31–32. He then explained that the "extent of [Plaintiff's] alleged limitations are not supported by her longitudinal treatment records," and referenced "consistent clinical findings and objective medical evidence, including predominantly unremarkable diagnostic imaging and intact musculoskeletal strength, ROM [range of movement], and sensation (other than in her left upper extremity) during physical examinations." *Id.* at 32. This goes to the consistency of Dr. Odonkor's opinion, as the

ALJ found Dr. Odonkor's opinion inconsistent with Plaintiff's physical examination and diagnostic imaging results.

Additionally, by way of example, the ALJ noted that Dr. Odonkor referenced Plaintiff's migraines and other conditions in the environmental limitations section of his RFC assessment, *see id.* at 593, but those conditions were not mentioned in the treatment records.  *Id.* at 33.  This goes to the supportability of Dr. Odonkor's opinion; specifically, the ALJ found the opinion less persuasive because it was not supported by the medical records and instead was based largely on Plaintiff's own reports.  Therefore, the Court finds that the ALJ's explanation of the supportability and consistency of Dr. Odonkor's opinion is "sufficient for the Court to enable the reviewing court to decide whether the determination is supported by substantial evidence."  *Pamela P.*, 2020 WL 2561106, at *5.[4]

The Court also finds that the ALJ's assessment of Dr. Odonkor's opinion is supported by substantial evidence.  As recognized above, the substantial evidence standard is quite deferential to the agency.  *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [a court] will not substitute [its] judgment for that of the Commissioner.").  The Court must "defer to the Commissioner's resolution of conflicting evidence," *Cage*, 692 F.3d at 122, and reject the Commissioner's findings of fact only "if a reasonable factfinder would have to conclude otherwise," *Brault*, 683 F.3d at 448.  Here, the medical records support the ALJ's conclusion that Dr. Odonkor's opinion was minimally persuasive.  Dr. Odonkor's records indicate

---

[4] Plaintiff also argues that the ALJ failed to explain how the state agency medical consultants were supported and consistent with the medical records.  She suggests that these opinions should not have been deemed persuasive because they were older and from non-examining physicians.  The ALJ, however, sufficiently articulated why these opinions were better supported by and more consistent with the medical records, including more recent diagnostic imaging results.  Tr. at 33.

that while Plaintiff reported pain in her joints, the pain generally got better with medication and physical therapy over time. The diagnostic imaging of Plaintiff's hips and knees did not show any acute issues, and reports characterize the issues that were identified as mild. Tr. at 567 (x-ray showing mild lower lumbar levocurvature); 585 (mild edema in soft tissues); 585 (x-ray showing mild lumbar levoscoliosis). While Plaintiff received steroid injections related to her pain and self-reported limitations to her ability to stand and walk, the ALJ's conclusion that the severe limitations proposed by Dr. Odonkor overstated Plaintiff's medical conditions is supported by substantial evidence in the record.

The Court further finds that that the ALJ did not fail to properly develop the record, even given Plaintiff's *pro se* status. It is true that "[t]he ALJ, unlike a judge in a trial, must himself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding, even when the claimant is represented by counsel." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (cleaned up) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). Thus, the ALJ has a duty to "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). This duty, however, is not without limits. An ALJ has no duty to develop the record unless there are "obvious gaps or inconsistencies." *See O'Connell v. Colvin*, 558 F. App'x 63, 64 (2d Cir. 2014) (summary order) (citing *Rosa*, 168 F.3d at 79 n.5).

Here, there were no obvious gaps or inconsistencies in the record. The record was adequate for the ALJ to make a disability determination, as it included, among other things, treatment notes from the relevant period from Plaintiff's treating sources, the results of objective diagnostic testing, and the prior administrative findings from the state. The record also contained a consultative physical examination to assist in ascertaining Plaintiff's physical functioning. Tr. at 501–04.

Plaintiff asserts that the ALJ should have "either contacted the treating specialist to better ascertain the basis for his opinion" or advised Plaintiff that more evidence was needed before denying her benefits.  ECF No. 12 at 9.  But Dr. Odonkor thoroughly described the basis for his opinion in his RFC assessment, *see* Tr. at 589–96, and Plaintiff points to no evidence the ALJ should have had, but failed to, obtain.  Moreover, the ALJ gave Plaintiff the opportunity to submit additional records in the thirty days following the hearing, and she did submit additional records.  *Id.* at 26.  It is therefore clear that the ALJ did not shirk his duty to fully develop the record.

### B.  Plaintiff's Subjective Statements

The Court next rejects Plaintiff's argument that the ALJ's finding that her statements "concerning the intensity, persistence, and limiting effects of her symptoms" were not "entirely consistent with the medical evidence and other evidence" was not supported by substantial evidence.  Tr. at 31.

When determining a claimant's RFC, "the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  *See also Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").  "The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations."  *Genier*, 606 F.3d at 49.  At step one, the ALJ must decide "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged," which is not contested here.  *Id.* (citing 20 C.F.R. § 404.1529(b)).

At step two, the ALJ makes a credibility determination.  Specifically, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record."  *Id.* (quoting 20 C.F.R. § 404.1529(a)) (brackets in original).  There are seven factors the ALJ "must consider": '[s]tatements [the claimant] or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts to work, or any other relevant statements [she] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings."  *Id.* (quoting 20 C.F.R. § 404.1512(b)(3). But "if the ALJ thoroughly explain[s] his credibility determination and the record evidence permits [the Court] to glean the rationale of the ALJ's decision," the ALJ need not "discuss all seven factors" and the decision will be affirmed.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order).

Here, although he did not cite all seven factors, the ALJ explained at step two that he did not find the Plaintiff's subjective statements of disability credible because they were "not entirely consistent with the medical evidence and other evidence in the record."  Tr. at 31.  Importantly, the ALJ noted that, throughout her appointments from late 2020 into early 2021, Plaintiff reported that her pain and functioning were continuing to improve in response to medication and a nerve block procedure, such that she generally experienced "more good days than bad days."  *Id.* at 32. *See Wetzel v. Berryhill*, 783 F. App'x 44, 47 (2d Cir. 2019) (summary order) (affirming an ALJ's finding that the claimant's pain was not debilitating where it was "well managed with medication").

In addition, although Plaintiff testified that she used a cane, the ALJ observed that the record did not contain any mention of the use of a cane or other handheld assistive device and,

rather, the record showed that she continued going on walks every other morning.  Tr. at 32.

Plaintiff contends that the ALJ disregarded evidence in the record showing that she had a need for

a cane, such as her abnormal gait, *id.* at 544, and her difficulty ambulating, *id.* at 502.  While the

ALJ noted those facts, *id.* at 31, he also noted that none of the medical records discussed the use

of a cane, *id.* at 32.  Indeed, Plaintiff testified that it was not prescribed; it was provided by a friend,

and, when Plaintiff asked her doctor about it, "he said it was a good idea."  *Id.* at 60.  Evidently,

the ALJ found that the use of a cane was not medically required, as there was no "medical

documentation establishing the need for a hand-held assistive device to aid in walking or standing"

or a description of "the circumstances for which it is needed."  SSR 96-9P, 1996 WL 374185, at

*7 (S.S.A. July 2, 1996).[5]  Although Plaintiff points to some facts in the record hinting that a cane

would be helpful, she does not identify medical documentation the ALJ disregarded demonstrating

her *need* to use a cane.  *See Nieves*, 2016 WL 11262523, at *13 (affirming an ALJ's opinion that

a claimant did not need a cane because, although her doctor "recommended she try to use a cane,"

the doctor "did not prescribe it" (internal quotation marks omitted)).

The ALJ also noted that Plaintiff had received unemployment benefits throughout 2019

and 2020, which overlapped with the period for which she sought disability insurance benefits.

Tr. at 32–33.  The ALJ explained that, "[a]lthough unemployment is not considered work activity

or dispositive on the issue of disability, . . . in order to be eligible for unemployment benefits, an

applicant must certify that he is ready, willing, and able to work."  *Id.* at 33.  Courts in this Circuit

---

[5] On its face, SSR 96-9P applies only to RFC assessments for less than a full range of sedentary work, which is a lower exertional level than the light work RFC assessment the ALJ gave Plaintiff here.  SSR 96-9P, 1996 WL 374185, at *1 (S.S.A. July 2, 1996).  Courts have applied this ruling in cases involving light work RFC assessments, however, given that it appears to be the only guidance on handheld assistive devices.  *See Nieves v. Colvin*, No. 3:14-CV-01736 (SALM), 2016 WL 11262523, at *13 (D. Conn. Feb. 10, 2016), *report and recommendation adopted*, No. 3:14-CV-01736 (VLB), 2017 WL 1050569 (D. Conn. Mar. 20, 2017); *Dahl v. Comm'r of Soc. Sec.*, No. 5:12-CV-302 (GLS) (ESH), 2013 WL 5493677, at *4 (N.D.N.Y. Oct. 1, 2013); *Gordon v. Colvin*, No. 1:14-CV-0541 (GTS), 2015 WL 4041729, at *4 (N.D.N.Y. July 1, 2015).

have stated that a claimant's collection of unemployment benefits "should not be the determinative factor" in an ALJ's analysis of the claimant's disability, but they have recognized that it is a relevant consideration. *Andrews v. Astrue*, No. 7:10-CV-1202 (RFT), 2012 WL 3613078, at *12 (N.D.N.Y. Aug. 21, 2012); *see also Plouffe v. Astrue*, No. 3:10 CV 1548 (CSH) (JGM), 2011 WL 6010250, at *22 (D. Conn. Aug. 4, 2011) (quoting the Commissioner's brief for the proposition that "'receipt of unemployment benefits does not preclude the receipt of Social Security disability benefits,' but rather, 'is only one of the many factors that must be considered in determining whether the claimant is disabled.'" (cleaned up)), *report and recommendation adopted*, No. 3:10-CV-1548 (CSH), 2011 WL 6010251 (D. Conn. Dec. 1, 2011).   Indeed, the Second Circuit has considered a claimant's "representation of readiness and ability to work in connection with his receipt of unemployment benefits" a relevant factor in affirming an ALJ's assessment of the claimant's credibility. *Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017) (summary order). *See also Sobeida C. v. Kijakazi*, No. 3:20-CV-269 (MPS), 2021 WL 3560924, at *2 (D. Conn. Aug. 12, 2021) (noting that the claimant "collected unemployment benefits after her alleged onset date").   Here, the ALJ permissibly considered the fact that Plaintiff, by collecting unemployment benefits during the relevant period, certified her willingness to work, because it bore on the credibility of Plaintiff's statements regarding the limiting effects of her pain.   Given the other evidence described in the ALJ's decision relating to Plaintiff's credibility, it is clear he did not afford dispositive weight to that fact.

Furthermore, the ALJ observed that the extent of Plaintiff's alleged limitations was "not fully supported by her longitudinal treatment records," such as "predominantly unremarkable diagnostic imaging" and physical examinations.   Tr. at 32.   Plaintiff contends that the ALJ should not have discredited Plaintiff's complaints of pain "solely because the available objective medical

evidence does not substantiate [the claimant's] statements." Pl.'s Br., ECF No. 12, at 12 (quoting 20 C.F.R. § 404.1529(c)(2). But the regulations acknowledge that objective medical evidence, such as diagnostic imaging and physical examinations, "is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. § 404.1529(c)(2).

And the ALJ did not discredit Plaintiff's reports of the intensity and persistence of her pain *solely* due to the objective medical evidence. Rather, the ALJ considered that evidence along with the other evidence discussed above—such as Plaintiff's reports to Dr. Odonkor that her pain was improving with treatment, the fact that she did not need a cane, and the fact that she represented herself as willing and able to work in seeking unemployment benefits. In considering the totality of the evidence in the record, the ALJ declined to accept Plaintiff's statements about the intensity, persistence, and limiting effects of her pain. The Court will not upset this credibility determination, given that "[i]t is the role of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki*, 534 F. App'x at 75 (quoting *Carroll*, 705 F.2d at 642). The ALJ therefore did not err in his evaluation of Plaintiff's subjective complaints of pain.

## IV.    CONCLUSION

For the reasons described above, Plaintiff's motion for judgment on the pleadings and remand is DENIED and Defendant's motion to affirm is GRANTED. The Clerk is directed to

close this case.

      **SO ORDERED** at Hartford, Connecticut, this 29th day of September, 2023.

                                        _/s/ Sarala V. Nagala_

                                        SARALA V. NAGALA

                                        UNITED STATES DISTRICT JUDGE